UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05-448 (ESH) |
| | : | |
| v. | : | |
| | : | |
| KIRK CARTER | : | Detention Hearing: January 12, 2006 |

## WRITTEN PROFFER IN SUPPORT OF DETENTION

As in the companion case, United States v. Antoine Jones, et. al, 05-386 (ESH), the government provides the following factual proffer to aid the Court and counsel at the detention hearing in this case.

In summary, the defendant stands before this Honorable Court, charged with Conspiracy to Distribute and to Possess with the Intent to Distribute 5 Kilograms or More of Cocaine, and 50 Grams or More of Cocaine Base. This charge arises out of a long-term narcotics-trafficking investigation being conducted by the joint FBI/MPD Safe Streets Task Force. In 2004, various confidential sources began telling law enforcement that Antoine Jones, who operated the nightclub Levels, in Northeast, Washington, D.C., was distributing multiple-kilogram quantities of cocaine to several customers in the greater Washington, D.C., area, frequently using his club Levels as a base of operations. Various techniques were employed by law enforcement to investigate Jones's illicit activities, including in person and video surveillance, review of pen register data, interviews of additional confidential sources and witnesses, a review of available subscriber information and pen-register data, a review of stored text-messages on the cellular telephones of Antoine Jones and his right-hand associate, Lawrence Maynard, obtained via search warrant, and ultimately a Title III wire interception on Antoine Jones's cellular telephone, which ran from September 2, 2005, through the date that the initial defendants were arrested,

October 24, 2005.

Information from these confidential sources was further corroborated by a traffic stop of Lawrence Maynard on April 5, 2005. The Highway Interdiction Unit of the Durham, North Carolina Police Department conducted a traffic stop of a 1997 Honda Odyssey mini-van bearing Maryland tags 273M195, operated by Lawrence Maynard. and also occupied by another individual in the vehicle front passenger seat. Their investigation revealed that this car was registered to Antoine Jones, with a date of birth of February 25, 1960, and to one of his residences, 12221 Brandywine Road, Brandywine, Maryland. In the course of further investigation, the interdiction unit canine alerted on the right rear passenger area of the mini-van. A search of the mini-van revealed a hidden compartment in the van, which contained six white plastic Target shopping bags, containing a total of $67,115.00 in U.S. currency, in various denominations, held together by rubber bands. When interviewed by the Interdiction Unit, both Maynard and his passenger denied any knowledge of the secret compartment and the money contained therein. The Honda Odyssey was impounded, the $67,115.00, was seized as evidence, Maynard received a warning ticket, and then was released without additional charges.

Throughout the course of the investigation prior to the wire interception, several members of Jones's organization were identified, including the instant defendant, Kirk Carter, and Lawrence Maynard, who is both the nightclub's manager, and Jones's right-hand man in the drug-trafficking business. In the course of the approximately 50 days of wire interception, other of Jones's customers were identified through telephone toll records, and license plate numbers, and surveillance. Among those customers were defendants Demetris Johnson, John Adams, Michael Huggins, and Kevin Holland. These same techniques confirmed investigators' belief

that defendant Kirk Carter was also a significant customer of Jones.

As set forth in far greater detail in the attached factual proffer, from the very early days of the wire interception, a clear pattern of telephone contacts was established between Jones and various individuals, whom investigators identified over time. In those calls, Jones and his colleagues discussed the timing and location of meetings, without any other substantive discussion. This pattern is consistent with what confidential sources indicated was his practice: short conversations setting up meetings to drop off money and pick up cocaine, without any further discussion on the telephone, for fear of being intercepted by law enforcement. Further, several common meeting places were discussed between Jones and his various customers, including commercial establishments along Branch Avenue in Maryland, and at the nightclub Levels.

Jones also uniformly spoke in code throughout the interception period. For example, he and his drug-trafficking colleagues speak frequently of the need for, and delivery of, "tickets," which was a reference to wholesale quantities of cocaine, perhaps kilograms. They spoke, too, of "VIP tickets" (larger quantities), and occasionally of "flyers." While also consistent with nightclub business - and thus a good cover - the conversations fairly quickly became obviously a code, based on, among other things, the occasional slip-up, e.g., a request by a customer for a "half ticket," or a query by Jones of a customer as to whether he still needed "that little ticket." Also, there were occasions when Jones's supply of "tickets" was obviously getting low, and when he was scrambling to redistribute them to other customers. For example, on one occasion, September 13, 2005, after speaking with another customer, John Adams about what he needed, Jones called customer Demetris Johnson and left a message saying that he needed "those two

tickets back." Jones then called Adams back and told him that he thought that "Youngin" (a reference to Johnson) had already sold some of his "tickets," and then continued to discuss with Adams how many tickets various people have and need. Similarly, towards the end of the interception period, Jones told Johnson that he was trying to save some of those tickets for Johnson.

Within the first few weeks of the wire interception, it further became obvious that Jones was being supplied by Hispanic-sounding males, with cellular telephone exchanges in McAllen, Texas, a major point-of-entry of cocaine into the United States, and Irvine, California. Throughout the course of the interception period, Jones spoke with at least three different Hispanic-sounding males - which investigators confirmed through pen register data were all in contact with each other - about the timing of shipments of "tickets," "music," and other references to cocaine. Based on the content of some of these calls, and surveillance of Jones, investigators discerned that Jones was meeting with frequency with one of these men at a stash location in Ft. Washington, Maryland. Based on surveillance photos, investigators have determined that that male is co-defendant Roel Bremea, Jr.

Based on telephone conversations during the third week in October, 2005, in which Jones discussed with the McAllen-based Hispanic male the fact that the "party" would happen on "Friday," (October 21, 2005), investigators obtained numerous search warrants for the residences of some suspected customers, along with Jones's two residences, the nightclub Levels, and the suspected stash house located at 9508 Potomac Drive, Ft. Washington, Maryland. In the early morning hours of October 24, 2005, teams of agents executed those search warrants and recovered approximately 97 kilograms of cocaine, three kilograms of crack cocaine, and in

excess of $800,000.00, from the stash house alone.  Arrested at that location were defendants Bremea, Alberto Rollando Carrillo-Montelongo, and Ricardo Sanchez-Gonzales.  Also recovered from various other search locations were smaller, still-wholesale quantities of cocaine, crack cocaine, large amounts of cash, and several weapons.  Recovered from Jones's Jeep was in excess of $69,000.00 in cash.  Several defendants in the companion case were arrested that day, and indicted on a one count drug conspiracy the following day.

   Also on the following day, October 25, 2005, a search warrant was executed on the residence of the instant defendant, Kirk Carter, located at 2504 Pomeroy Road, SE, Apartment 402, Washington, D.C.  Recovered from that apartment were, among other things, 2 electronic scales, a strainer containing white powder residue, a bag containing numerous empty blue ziplock baggies, and assorted ammunition, including 12-gauge shotgun shells.  Defendant Carter was indicted in a separate, identically-worded indictment in December, 2005, and was arrested on January 6, 2006.

   At the detention hearings for the initially-indicted defendants, the government relied in large part on the attached factual proffer, which the government hereby adopts and incorporates by reference.  Particularly relevant to defendant Carter are paragraphs 18, 22, 31, 33, and 34.  In addition to those paragraphs, which detail wire activity between defendant Carter and Jones, the government notes that the night before the arrests of Jones and the other initially-indicted defendants, Jones and Carter engaged in several telephone conversations, similar to the pattern established throughout the course of the wire, in which they arranged to meet outside of Carter's apartment building on Pomeroy Road, SE.  Surveillance of Jones confirmed this brief meeting, in which investigators believe Carter and Jones engaged in a narcotics transaction.

A final point in favor of the detention of Mr. Carter is his criminal record: as the Pretrial Services Agency Report makes clear, Carter was convicted in 1992 of Drug Conspiracy in this District Court, and sentenced to 97 months incarceration. His supervision in that case terminated fewer than two years ago.

The government submits that, taken together with the rebuttable presumption triggered by 18 U.S.C. § 3142(e), all these facts and circumstances point to the inexorable conclusion that no combination of conditions of release would reasonably assure the safety of community if defendant Carter were released pending trial.

    Respectfully submitted,

    KENNETH L. WAINSTEIN

    _____
    Rachel Carlson Lieber
    DC Bar No. 456-491
    John V. Geise
    Assistant United States Attorneys
    555 4th Street, N.W., Room 4820
    Washington, D.C. 20530
    (202) 353-8055